MIED (Rev 1/31/05) Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PER~~SON~~

| United States District Court | Case: 2:10-cv-11132<br>Judge: Edmunds, Nancy G<br>MJ: Morgan, Virginia M<br>Filed: 03-22-2010 At 11:21 AM<br>HC JEREMY RUCKER V BLAINE LAFLER (L<br>G) |
|---|---|

Name (under which you were convicted):

**Jeremy Germain Rucker**

| Place of Confinement:<br>Boyer Road/Carson City Correct. Facility | Prisoner No.:<br>657235 |
|---|---|

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
|---|---|
| **JEREMY GERMAIN RUCKER** v. | **BLAINE LAFLER** |

The Attorney General of the State of Michigan:     Q Mike Cox

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: __3rd__ Circuit Court, Criminal Division, Frank Murphy Hall of Justice, 1441 St. Antoine, Detroit, Michigan 48226-2384.

    (b) Criminal docket or case number (if you know): _____07-006144-01_____

2. (a) Date of the judgment of conviction (if you know): _____July 26, 2007_____

    (b) Date of sentencing: _____August 9, 2007_____

3. Length of sentence: _____4 to 15 yrs._____

4. In this case, were you convicted on more than one count or of more than one crime?

    ☒ Yes      ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: Criminal Sexual Conduct 2nd (Weapon Used), CSC - Assault W/I to Rape.

    _____

    _____

    _____

6. (a) What was your plea? (Check one)

    ☒ Not guilty          ☐ Nolo contendere (no contest)

    ☐ Guilty              ☐ Insanity plea

    (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

    _____

    _____

    _____

MIED (Rev. 1/31/05) Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus

(c) If you went to trial, what kind of trial did you have? (Check one)

☐ Jury  ☒ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes  ☒ No

8. Did you appeal from the judgment of conviction?

☒ Yes  ☐ No

9. If you did appeal, answer the following:

(a) Name of court: Michigan Court of Appeals

(b) Docket or case number (if you know): 280082

(c) Result: Affirmed

(d) Date of result (if you know): October 23 2008

(e) Citation to the case (if you know):

(f) Grounds raised: THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY BECAUSE DEFENDANT'S IDENTITY AS THE PERPETRATOR WAS NOT PROVEN BEYOND A REASONABLE DOUBT.

(g) Did you seek further review by a higher state court?  ☒ Yes  ☐ No

If yes, answer the following:

(1) Name of court: Michigan Supreme Court

(2) Docket or case number (if you know): 137851

(3) Result: Appeal Denied

(4) Date of result (if you know): March 23, 2009

(5) Citation to the case (if you know):

(6) Grounds raised: THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY BECAUSE DEFENDANT'S IDENTITY AS THE PERPETRATOR WAS NOT PROVEN BEYOND A REASONABLE DOUBT.

(h) Did you file a petition for certiorari in the United States Supreme Court?

☐ Yes  ☒ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

MIED (Rev 1/31/05) Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules concerning this judgment of conviction in any state court?   ☑ Yes        ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

   (a) (1) Name of court: _Frank Murphy Hall of Justice, 3rd Circuit Court_

      (2) Docket or case number (if you know): _07-006144-01_

      (3) Date of filing (if you know): _____

      (4) Nature of the proceeding: _Post-Appeal Relief_

      (5) Grounds raised: _COUNSEL WAS INEFFECTIVE IN NOT INTERVIEWING AND PLACING ON THE STAND ALIBI WITNESSES WHOM, WERE PLACED ON THE WITNESS LIST BY JUDGE THROUGH PROSECUTOR WHOM INTERVIEWED THEM.   POLICE MISCONDUCT, IN CONNECTION WITH THE COLLECTION OF DNA, CONSTITUTED DENIAL OF DUE PROCESS. THE RIGHT TO COUNSEL AT POST-INDICTMENT PRE-TRIAL PHOTOGRAPHIC LINEUP WAS NOT RENDER TO THE LINEUP WERE THE DEFENDANT WAS THE 'FOCUS OF THE INVESTIGATION'._

      (6) Did you receive a hearing where evidence was given on your petition, application, or motion?   ☐ Yes     ☑ No

      (7) Result: _Pending_

      (8) Date of result (if you know): _Pending_

   (b) If you filed any second petition, application, or motion, give the same information:

      (1) Name of court: _____

      (2) Docket or case number (if you know): _____

      (3) Date of filing (if you know): _____

      (4) Nature of the proceeding: _____

      (5) Grounds raised: _____

      (6) Did you receive a hearing where evidence was given on your petition, application, or motion?   ☐ Yes     ☐ No

      (7) Result: _____

      (8) Date of result (if you know): _____

MIED (Rev. 1/31/05) Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?          ☐ Yes          ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:          ☐ Yes          ☐ No

(2)  Second petition:          ☐ Yes          ☐ No

(3)  Third petition:          ☐ Yes          ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: THE TRIER OF FACTS' CONCLUSION OF FACT CAUSED BY THE PREJUDICE OF THE TRIAL COURT, TOWARDS THE GUILT OF THE PETITIONER, EQUATES TO A JUDICIAL PREVARICATION OF PRESUMPTIVE EVIDENCE THAT IN ITSELF WAS CONTRARY TO ITSELF IDENTIFYING A DUE PROCESS MISCARRIAGE OF JUSTICE.

4

MIED (Rev 1/31/05) Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus

**(a)** Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

There was a circular of the Petitioner were the Complainant works with the picture
on it different from that of the description given at the crime scene by the Complaina
Complainant of the assailant. 6 days later, the Complainant picks this same picture
in a photo lineup. At trial, the eyewitness couldn't be able to give accurate descript
description of the assailants face, yet the Trier of Fact based her decision on the
eyewitness' negative and internally inconsistent false testimony, entering improper
comments of Reverse Racial Subjectivity, ignoring evidence of Petitioner's innocence.

**(b)** If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

**(c)** **Direct Appeal of Ground One:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   ☒ Yes        ☐ No

   (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

   _____

   _____

**(d)** **Post-Conviction Proceedings:**

   (1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the
       Michigan Court Rules?        ☐ Yes        ☒ No

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   _____

   (3) Did you receive a hearing on your motion or petition?        ☐ Yes        ☒ No

   (4) Did you appeal from the denial of your motion or petition?        ☐ Yes        ☐ No

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

   ☐ Yes        ☐ No

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** THE MICHIGAN COURT OF APPEALS, FAILING TO ADDRESS THE CLEARLY ERRONEOUS FINDINGS, UNREASONABLY APPLIED [LAW], MAKING FINDINGS THAT'S NOT SUPPORTED BY RECORD OR [LAW]

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): The Michigan Court of Appeals stated "Defendant's sole issue on appeal is that there was insufficient evidence to support his identification as the person who committed the crimes." This however is false, insufficiency was secondary, trial court's behavior was primary, and was never addressed. They stated the necessity, in this case, for a Wade hearing but declined to give one. They stated "the victim was face to face with the perpetrator throughout the entire assault," but didn't regard the different description she gave at the crime scene from Petitioner, stating
(b) If you did not exhaust your state remedies on Ground Two, explain why. "not detailed in her description, Kelly, was able to identify defendant on his ears'

_____

_____

_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
[✓ Yes]        No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?   □ Yes   ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?

    ☐ Yes    ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two:  _n/a_____

_____

_____

_____

GROUND THREE: ___COUNSEL WAS INEFFECTIVE IN NOT INTERVIEWING AND PLACING
ON THE STAND ALIBI WITNESSES._____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Alibi witnesses came forth with the whereabouts of the petitioner on the date and time
of the crime with evidence in corroboration thereof, interviewed and introduced to
the Trial Judge whom put them on the witness list, with them present day of Trial.
Defense counsel expressed, to the defendant, counsel wasn't ready for an Alibi defense,
but was ready for a misidentifcation defense. This conversation is noted to the trial
court by Atty. Winters stating "however, I've discussed this case again with Mr. Rucker

(b) If you did not exhaust your state remedies on Ground Three, explain why:  I didn't have the Alibi
witnesses to verify its existence after trial. They couldn't be found.

**(c) Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes      ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: I couldn't find the alibi witnesses to be able to have all the evidence of the ineffectiveness of counsel.

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.5000 of the Michigan Court Rules?   ☒ Yes      ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion for Relief of Judgement.

Name and location of the court where the motion or petition was filed: 3rd Circuit Court, Frank Murphy Hall of Justice, 1441 St. Antoine, Detroit, Michigan 48226.

Docket or case number (if you know):  07-006144-01

Date of the court's decision: Pending

Result (attach a copy of the court's opinion or order, if available): Pending

(3) Did you receive a hearing on your motion or petition?

☐ Yes      ☒ No

(4) Did you appeal from the denial of your motion or petition?

☐ Yes      ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes      ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: Still pending.

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: none.

MIED (Rev 1/31/05) Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus

**GROUND FOUR:** POLICE MISCONDUCT, IN CONNECTION WITH THE COLLECTION OF DNA, CONSTITUTED DENIAL OF DUE PROCESS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
The evidence of saliva from the assailant, on the clothing of the Complainant, was material. This evidence is factual from the Complainant telling the police officials that the perpetrator "was kissing my breast and slobbering all over me," with her clothes (bra and shirt) on. In regards to this exculpatory evidence, the Detroit Police Department had all obligation to describe and inspect, knowing its existence, yet didn't.

(b) If you did not exhaust your state remedies on Ground Four, explain why: I had no proof of "Bad Faith" on the part of the Detroit Police Department until the closing of the Detroit Police Crime Lab and the persistent investigation thereof.

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

□ Yes            ▪ No

(2) If you did not raise this issue in your direct appeal, explain why: No proof of Bad Faith.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?

▪ Yes            □ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion for Relief of Judgement.

Name and location of the court where the motion or petition was filed: 3rd Circuit Court, Frank Murphy Hall of Justice, 1441 St. Antoine, Detroit, Michigan 48226

Docket or case number (if you know): 07-006144-01

Date of the court's decision: Pending

Result (attach a copy of the court's opinion or order, if available): Pending

(3) Did you receive a hearing on your motion or petition?

□ Yes            ▪ No

(4) Did you appeal from the denial of your motion or petition?

□ Yes            ▪ No

MIED (Rev. 1/31/05) Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes          ☒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: ___Still pending_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: ___None___

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?          ☐ Yes          ☒ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: ___#3and 4, I couldn't find My Alibi witnesses, and no proof of Bad Faith until the investigation began.___

_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ___3 and 4, I couldn't find Alibi witnesses, and no proof of Bad Faith until the investigation began.___

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?          ☐ Yes          ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

MIED (Rev 1/31/05) Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   ☒ Yes   ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. 3rd Circuit Court, Frank Murphy Hall of Justice, 1441 St. Antoine, Detroit, Michigan 48226-2384, Doc. No. 07-006144-01, Motion for Relief of Judgement, 6.500 Motion, ineffectiveness of counsel, the right to counsel at Photographic line-up, and Police Misconduct.

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Unknown, substitute for Atty. William Winters

(b) At arraignment and plea: n/a

(c) At trial: Attorney William Winters III (P35975) 17940 Farmington Road, Suite 280, Livonia, Michigan 48152.

(d) At sentencing: Attorney William Winters III (P35975) 17940 Farmington Road, Suite 280, Livonia, Michigan 48152.

(e) On appeal: Lawrence J. Bunting (P27111) 3190 Rochester Road, Suite 100, Troy, Michigan 48083-5422.

(f) In any post-conviction proceeding: IN Pro Se.

(g) On appeal from any ruling against you in a post-conviction proceeding: InPro Se

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   ☐ Yes   ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   ☐ Yes   ☒ No

MIED (Rev. 1/31/05) Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus

Therefore, petitioner asks that the Court grant the following relief: <u>Grant this Petition and</u> order <s>the retrial or release from custody or such other, further, and</s> <s>different relief as the Court may deem just and proper, and oral arguments.</s> or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

_____
Address

_____

_____
Telephone Number

**I** declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _March 17 2010_ (month, date, year).

Executed (signed) on ___3-17-10___ (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____

* * * * *

12

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY GERMAIN RUCKER,
             Petitioner,

Vs.


BLAINE LAFLER,
          Respondent,

_____/

Federal Court No._____
Supreme Court No. 137851
Court of Appeals No. 280082
Circuit Court No. 07-006144-01


**Judge:**

EVIDENTIARY AND DISCOVERY
HEARINGS REQUESTED


## PETITION FOR WRIT OF HABEAS CORPUS

### 28 U.S.C. § 2254


**NOW COMES PETITIONER,** Jeremy Germain Rucker, In Forma Pauperis, and moves
this Honorable Court to Grant Habeas Corpus Relief, and States as Follows:


1.) Mr. Rucker is and has been a Citizen of the State of Michigan,
currently incarcerated at Boyer Road/Carson City Correctional Facility,
located in Carson City, Michigan. Petitioner is currently being held
as Prisoner Number, #657235.

2.) Boyer Road Corrctional Facility is a State Prison operated by
the State of Michigan, in the Southern District of Michigan. Respondant
Blaine Lafler is the Warden of Boyer Road/Carson City Correctional Facility

3.) Mr. Rucker's Conviction arises out of the 3rd Judicial Circuit
Court, Wayne County, 1441 St. Antoine, Detroit, Michigan 48226-2384.

4.) Mr. Rucker was charged with One Count of Criminal Sexual Conduct
2nd degree (Weapon used) and One Count of Criminal Sexual Conduct – Assault
with Intent to Penetrate. These Charges were ran Concurrent after a
Wavier Trail before Honorable Judge, Vera Massey Jones dated: July 26, 2007
on August 9, 2007.

## Assignment of Errors

(1) The Michigan Supreme Court Declined to analyze the adjudicative record of the Michigan Court of Appeals and The Third Circuit Court stating "the questions presented were not applicable to there Court. See Michigan Constitution Article VI § 6.

(2) The Court of Appeals, denying the claims of the De novo hearing, failed to address them all. See Harris v Stovall 212 F3d 940,943.

  (2.1) The Court of Appeals unreasonably applied only part of the law of The Totality of the Circumstances relying only in part on People v. Davis 241 Mich App 697, 701-705, quoting People v. Kachar 400 Mich 78, which acknowledged Neil v. Biggers 93 S.CT. 375, 383-384, only to the eyewitness testimony of identification, (which the Prosecution noted as being highly impeachable), Pros. Trans. pg 10. Refusing however, to apply such law to the victims prior inconsistant statements of identification indicated at the scene of the crime which were and are contrary to the defendants appearance, and to the suggestiveness of the photographic lineup causing the irreparable misidentification by the victim and The Michigan Court of Appeals to create a manifest Miscarriage of Justice. The necessity for a Wade hearing was acknowledged by the Michigan Court of Appeals but was declined. They also declined the serious inquiry of the Due Process errors of the Trial Court as Trier of Fact. See U.S. v Wade 87 S.Ct. 1926, Simmons v U.S. 88 S.Ct. 967, Williams v Taylor 120 S.Ct. 1495, U.S. v Stevens 935 F2d 1380, 1389, U.S. v Graham 858 F2d 986, 990 n 5, U.S. v Ruis 860 F2d 615, 617, U.S. v Tapia 761 F2d 1488, 1492.

(3) The Trial Court in making its findings of fact and conclusion of law through a bench trial proceedings, gave preemptive weight to the eyewitness testimony which was substantially out of proportion to its logical force shown in the recounting of the victims and eyewitness testimony not being fairly supported by the record. The testimonially refragable inferences effected the Substantial Rights of the accused causing a Manifest Disregard of Evidence. See FRE and MRE 201(b)(2), 403, 801(d)(1)(A)and(C), In re Winship 90 S.Ct. 1068, Giglio v U.S. 92 S.Ct. 763, 766, Engle v Isaac 102 S.Ct. 1558, 1574-1577, Scheuer v Rhodes 94 S.Ct. 1683, 1689, U.S. v Agurs 96 S.Ct. 2392, 2396, Mills v Scully 826 F2d 1192, 1195, U.S. v Alzate 47 F3d 1103, 1109-1110, U.S. v Wallach 935 F2d 445, 458-459, U.S. v Massey 594 F2d 676, 680-682, U.S. v Marty 36 F3d 1349, 1358, Higgins v Renico 362 F.Supp.2d 904, 924, People v Ullah 216 Mich.App. 669, 673, People v Simon 189 Mich.App. 565, 568, People V Carines 460 Mich. 750, 763-765, People v Malone 445 Mich. 369, 382-410, People v Blackston 481 Mich. 451, 462, 466-467, 483-487, In re Murchison 75 S.Ct. 623, 625, Bracy v Gramley 117 S.Ct. 1793, 1799, U.S. v Smithers 212 F3d 306, 314-316

## Assignment of Errors
### Continued

(3.1) Reverse racial subjectivity by the Trial Court's comments in the Court's statement of reasons conveyed Trial Courts intent for judgement. See Michigan Court Rules 9.205 B(1) (b,c, and d) Michigan Code of Judicial Conduct CANON Laws 2(A,B), and 3(A)(1,8 and 10), Liteky v U.S 114 S.Ct. 1147, 1155-1157, Giglio v U.S. 92 S.Ct. 763, 766, U.S. v McCarty 36 F3d 1349, 1358[19], U.S. v Hathaway 798 F2d 902, 909-911, Brecht v Abrahamson 113 S.Ct.1710,1720-1722 and n 9. Lastly, The U.S. Constitution VIth Amendment.

(3.2) An inadequacy of verdict is obvious by the fact that:
1) Both the victim and eyewitness offered internally inconsistent statements.
2) The fingerprints found were not that of the accused.
3) There is no physical evidence linking the accused to the crime.
4) The Detroit Crime Lab Exacted DNA from the trunk of the vehicle instead of from the victims clothes where saliva from the assailant could be found.
5) The crime scene was inside the vehicle yet, that area, The Detroit Crime Lab failed to examine, the DNA on the trunk turned out not to be DNA at all.
6) Trail Counsel was ineffective in not placing on the stand Alibi witnesses whom, were at trail, Prosecution interviewed and did not object to and the Judge admitted to the witness list at trial.

Through the notation of these fact's, a standard of prejudice and Miscarriage of Justice, in this case, has interupted the public confidence in the integrity of the judicial system by ignoring these factors of actual innocence. See U.S. v Olano 113 S.Ct. 1770, 1779, Sawyer v Whitley 112 S.Ct 2514, 2517-2523, Schlup v Delo 115 S.Ct. 851, 868-869, Cukaj v Warran 305 F.Supp.2d 789, 798-799, Keeney v Tamayo-Reyes 112 S.Ct. 1715, 1721, 1) Giglio v U.S. 92 S.Ct. 763, 766, U.S. v Agurs 96 S.Ct. 2392, 2397 and n 7, Davis v Alaska 94 S.Ct. 1105, 1108-1111, Kyles v Whitley 115 S.Ct. 1555, 1569-1571, Biglow v Williams 367 F3d 562, 575, U.S. v Leo-Quijada 107 F3d 786, 794, U.S v Wallach 935 F2d 445, 456-459, 2) U.S. v Agurs 96 S.Ct. 2392, 2401 n 18, Sawyer v Hofbauer 299 F3d 605 611-613, 3) Vasquez v Jones 496 F3d 564, 576-577, Washington v Hofbauer 228 F3d 689, 709, Souter v Jones 395 F3d 577, 595, 4) U.S. v Agurs 96 S.Ct. 2392, 2402, Kyles v Whitley 115 S.Ct. 1555, 1571-1576, U.S. v Giacalone 541 F2d 508, 515, Fagan v Tripplett No. 95-71040,5-30-96, 5) Arizona v Youngblood 107 S.Ct. 333, 337, People v Darwich 226 Mich App 635, 637, www.ojp.usdoj.gov/nij/dna/welcome.html, 6) Strickland v Washington 104 S.Ct. 2052, Massaro v U.S. 123 S.Ct. 1690, 1696, Matthews v Abramajitys 319 F3d 780, 787-790, Lawrence v Armontrout 900 F2d 127, 130, Stewart v Wolfenbarger 468 F3d 338, 354-361.

# REASONS WHY THIS PETITION SHOULD BE GRANTED

As set forth in the following arguments, Petition had substantive
arguments about weather, under the "Clearly Erroneous" standard of review
and the COMPLETE "Totality of the Circumstances," a rational Trier of
Fact, given evidence through Prosecutions witnesses of actual innocense,
would find the the essential elements of the crime were proven beyond
a reasonable doubt to convict the Petitioner of this crime. Jackson v
Virginia 99 S.Ct. 2781, 2788-2790. If the Substantive arguments of the
Petitioner are correct, a Miscarriage of Justice has occur and "cause"
and "actual prejudice" through the "deliberate deception of the Trial
Court by the presentation of known 'false evidence'" which "includes
untrue testimony" are "incompatible with the rudimentary demands of
Justice," "a new trial is required if the false testimony could... in
any reasonable likelihood have affected the jury or that it may have
affected the outcome of the trial,' 'such a determination requires an
independent examination of the entire record.'" Engle v Issac 102 S.CT.
1558, 1575-1576, Giglio v U.S. 92 S.Ct. 763, 766, Mills v Scully 826
F2d 1192, 1195.

In the Michigan Court of Appeals, the Standard of Review for
the sufficiency of the evidence through a de novo hearing, People v.
Sherman-Huffman 241 Mich. App. 264, 265; aff'd 466 Mich. 39, and the
Findings of Facts at a Bench Trial using a Clearly Erroneous standard,
People v. Garcia 398 Mich. 250. The Trial Court's obiter dictum
illogically placed inference upon inference causing bias to the Michigan
Court of Appeals concluding that based on all the evidence, the internal
inconsistencies and the problems with the witnesses' descriptions when
compared independently to the defendant were not enough to raise a
reasonable doubt. I must respectfully disagree, and so does (MRE) 201(b)
which states: "a Judicially noticed fact must be one 'not subject to

reasonable dispute,' in that it is either (1) generally known within the territorial jurisdiction of the Trial Court or (2) <u>capable of accurate and ready determination by resort to sources 'Whose accuracy' 'cannot' reasonably be questioned</u>. Stated the same as (FRE) 201(b). Michigan Court Rules Practice 201.3 defines 'not subject to reasonable dispute' stating "the Courts certitude that the fact is true must be an objective (beyond dispute) not subjective (proprietary in nature) certitude. Reasonable persons must be able to reach the same conclusion." Compare to Jackson v Virginia 99 S.Ct. 2781, 2789 n 13 and CJI 2d 7.8(5). The inconsistancies and problems with the witnesses' descriptions are indicative of reasonable dispute, which I might add is close to the language of the constitution. In a case where 'actual innocence' is at issue, <u>Schlup</u> v. <u>Delo</u> 115 S.Ct. 851, 867-869, details the proscription of <u>Murray</u> v. <u>Carrier</u> 106 S.Ct. 2639, instead of <u>Jackson</u> v. <u>Virginia</u> 99 S.Ct. 2781, in addition, if the Trier of Facts construed the evidence differently than actual showing of evidence because of internal inconsistencies of the victim and the eyewitness, than the record could be said to be devoid of evidence of guilt towards the Petitioner.

The petitioner asks for this honorable Courts recognition of the contradictory analysis of the facts by the Michigan Court of Appeals as being unreasonable since there are Procedural Rule set by the Michigan Court Rules Practice §§ 2613.6, 6403.1, and 6403.2, rules the Michigan Court of Appeals didn't comply to toward an examination of the error's of the Trial Court.

.   Had The Michigan Court of Appeals complied with such examination, since they recognized that "In this case, the Michigan Supreme Court and the United States Supreme Court have recognized problems with the trustworthyness and inherent possibility of error when relying on the subjective accuracy of eyewitness identification <u>U.S.</u> v. <u>Wade</u> 87 S.Ct.

1926, People v. Anderson 389 Mich. 155, 180," a Wade hearing would have
occurred, upon which, since this case involves a Miscarriage of Justice,
Wade supra 1933, the Michigan Court of Appeals would have been compelled
to vacate the conviction, they stated in Contrary, however, in recognition
of the necessity for a Wade hearing, " this Court has declined to read
that Language as a General Proscription against the use of such evidence."

The Michigan Court of Appeals also held in their opinion that "the
Victim had no difficulty in identifying defendant in a Photographic
lineup," Contrary to the Victim's in-court testimony, which is a Manifest
Miscarriage of Justice. The sketch, if the Michigan Court of Appeals
would have examined in the request for Oral Arguments they decline, would
have been assessed differently from the Trial Courts opinion as "having
a striking resemblance to defendant." The sketch did not look like me
at all! Which was noted by the Defense Counsel in his recognition of
Facts. I argue the Trial Courts opinion of the sketch.

The grounds for this Petition include issues that involve the
Constitutionality of the interpretation and application of Statutory
Provisions, Legal Principles of Major significance involving Michigan's
jurisprudence, and that the decision of the Court of Appeals is Clearly
Erroneous and will cause material injustice, and malfeasance raising
a Federal Question and Substantial Legal Concerns.

The Petitioner is unlearned in Law and Legal Procedure and Untrained
in the art of Advocacy, with limited access to research materials and
Competent Legal Advice; because of this, the petitioner respectfully
request that this Court not reject any part of his pleadings filed
herewith for purely technical reasons, and that this Court make an effort
to correct sua sponta, any such errors in his pleadings. See Hanies v
Kerner 92 S.Ct. 594, 596, U.S. v Jennings 83 F3d 145, 148, Harris v
Johnson 784 F2d 222, 224, Sanders v U.S. 113 F3d 184, 187, People v

Herrera 204 Mich. App. 333, 339, (For less Stringent Standards than formal pleadings drafted by a Lawyer's).

Upon the part of the Petitioner Sincere belief that the Pleadings, are Meritorious and deserving of the consideration of this Court, notwithstanding the fact that they are filed <u>In Propria Persona</u>, without the aid or benefit of Counsel, the Petitioner is now respectfully asking this Court to Grant Habeas Relief so that these issues can be addressed and examined on their legally Respective Merits. These issues derive from the point heading presented as a Fourteenth Amendment violation in the Br: Brief to Appeal which is:

> I.   **THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY BECAUSE DEFENDANT'S IDENTITY AS THE PERPETRATOR WAS NOT PROVEN BEYOND A REASONABLE DOUBT.**

This Petition is followed by a Fact Intensive brief that details the Legally Respective Merits.

## <u>RELIEF REQUESTED</u>

For these reasons, Petitioner, Jeremy Rucker, asks the following:

A.    That after full and proper consideration, viewing the Totality of the Circumstances, with all evidence and proper reviews, as to avoid a Manifest Miscarriage of Justice, accounted for, this Court grant Petition and order that Jeremy Germain Rucker either be promptly retried or released from custody.

B.    That this Court grant such other, further, and different relief as the Court may deem just and proper under the circumstances; and

C.    That this Court grant oral arguments in this matter.

**Respectfully submitted,**

Date 3 / 17 / 2010

Jeremy G. Rucker   # 657235

Petitioner In Pro Se

10274 E. Boyer Road

Carson City, Michigan 48811-50

bad faith by the government for purposes of the Due Process Clause must
necessarily turn on the government's knowledge of the exculpatory value
of the evidence at the time it was lost or destroyed.' 109 S.Ct. 337."
Stevens at 1388. "The performance of serological testing" Id, is generally
accepted in the scientific community as reliable. See People v. McMillan
213 Mich. App. 134, and People v. Dungy 147 Mich. App. 83. "It necessarily
follows that if the omitted evidence creates a reasonable doubt that did
not otherwise exist, constitutional error has been committed. This means
that the omission must be evaluated in the context of the entire record....
If the verdict is already of questionable validity, additional evidence
of relatively minor importance might be sufficient to create a reasonable
doubt." Agurs at 2402. MCR 6.201(B)(1),(2), provides that all exculpatory
evidence and police reports must be provided to each defendant, which includ
material evidence.

## Summary of Argument

"A 5-4 Court held that the prosecutor's failure to disclose potentiall
exculpatory information that would have created a reasonable probability
of a different result entitled the petitioner to Habeas relief without
further harmless error standard in Habeas cases with the materiality of
Brady, the Court concluded that if undisclosed evidence is material,
additional harmless error analysis is unnecessary, as the error cannot be
harmless." Kyles v Whitley 115 S.Ct. 1555, 1573. Material is defined as:
physical evidence that prove or disproves, make proposition at issue more
or less probable, or can throw a light on the ultimate issue made by the
pleadings. See Blacks Law Dictionary 9th edition. With regards to Brady
and MCR 6.201(B)(1);(C)(2)(b),(c);(H), the evidence of saliva from the
assailant, on the clothing of the complainant, was material. This evidence
is factual from the Complainant telling the police officials that the
perpetrator "was kissing my breast and slobbering all over me" with her

- 37 -

bra and shirt on. Of the Detroit Police Department, obviously crime scene investigators, the Complainant stated at trial, "they asked me what happened They asked me if I needed medical assistance. They asked me if I was raped and I needed to go to the Hospital. I said no and I declined it, I had to sign a waiver." (Tr. Trans. pg. 16). In U.S. v. Giacalone 541 F2d 505, "the circumstances... clearly point to the probability that he was abducted in the automobile (here at issue) to prevent him (Hoffa) from exercising his union rights. These circumstances would call for a search of the automobile, and for laboratory examination of its contents. The F.B.I.... must search the automobile to obtain evidence that Hoffa was abducted." Id, 515. Likewise, being in charge of the crime scene, through the interest of public safety and vowed oath, the Detroit Police Department had all obligation to describe and "inspect any tangible physical evidence," MCR 6.201(A)(6), and "rely on factual allegations," MCR 6.102(B). U.S. v. Sokolow 109 S.Ct. 1581, noted "We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found' Illinois v. Gates 103 S.Ct. 2317, 2332.... 'The Totality of the Circumstances - the whole picture... does not deal with long certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same, and so are law enforcement officers.' U.S. v. Cortez 101 S.Ct. 690, 695." Id, 1585-1586. Fact that the description given at the crime scene by complainant is, as with the sketch, different than that of the "'employment of photographs by police' which the Supreme Court acknowledged 'may sometimes cause witnesses to err in identifying criminals' 'pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized.' Simmons v. U.S. 88 S.Ct. 967, 971." Stevens at 1389. For which, the Complainant is picked out in the photolineup, is reliable,

- 38 -

clients annually. Today, we have 16 lawyers, one paralegal, and four clerks, and we still represent 5,000 clients annually.... The predictable result is increased recidivism, which drives up the cost of corrections while reducing public safety.... In the long run the cost of improving our indigent defense system is far less expensive, in both human and fiscal terms,than the cost of status quo.' On March 26, 2009, the Detroit Free Press published an editorial citing the 'state's abysmal public defender system' as one reason that the state should develop a state innocence commission. The Press suggests that 'if even conservative estimates based on DNA exonerations are correct, Michigan prisons currently hold over 1,000 innocence people. That should cause leaders to act.' On April 28, the State Appellate Defenders Office reported to the House Judiciary Appropriations Subcommittee that they needed $318,000 to hire four more people to review that may have been tainted by lab problems over the past 12 years." MI-CURE News, August 2009, Problems continue from closing of Detroit Police Crime Lab, and More Shortcomings of Michigan Public Defense system revealed. See also, Criminal Defense Newsletter, October 1999, DNA collecting and Processing, and What every Law Enforcement Officer should know about DNA evidence. The Petitioner asks this Court's Judicial Notice, by way of Fed. Rules of Evid. 201(b) and MRE 201(b), of these facts. (Ref. Ex. A 16).

Examining <u>People</u> v. <u>Dungy</u> 147 Mich. App. 83, a heavy caseload at the Prosecutor's office led to a seven-month delay between the charged sexual assault and defendant's arrest, and this prevented the defendant from obtaining potentially exculpatory serological comparison studies of bodily fluids, <u>defendant was entitled to dismissal of charges because of the "inexcusable prejudice" caused by the delay.</u> In short, in the instant case, upon a cursory examination of Trial Court records in the matter of DNA evidence and the Complainants In-court testimony, a constitutional violation caused by negligence to investigate exculpatory evidence, prejudice this case

- 39 -

## **RELIEF REQUEST**

For these reasons, Petitioner Jeremy Germain Rucker, asks that this Court grant the petition for writ of habeas corpus.


                                        Respectfully Submitted



Date 3 / 17 / 2010                      Jeremy G. Rucker # 657235
                                        Petitioner In Pro Se
                                        10274 E. Boyer Road
                                        Carson City, MI 488111

III.    COUNSEL WAS INEFFECTIVE IN NOT INTERVIEWING AND PLACING
        ON THE STAND ALIBI WITNESSES WHOM, WERE AT TRIAL,
        INTERVIEWED BY PROSECUTOR, AND, UPON THE REQUEST OF THE
        PROSECUTOR, PLACED ON THE WITNESS LIST ON THE DAY OF TRIAL
        BY THE TRIAL JUDGE.

## Standard of Review

The sixth amendment guarantees that a criminal defendant will not
be convicted without the effective assistance of counsel. "Just as a
reviewing court should not second guess the strategic decisions of counsel
with the benefit of hindsight, it should also not construct strategic
defenses which counsel does not offer. Kimmelman v. Morrison 106 S.Ct. 2574,
2588. The role of the court on review is to "evaluate the conduct form
counsel's perspective at the time.' Id. (quoting Strickland v. Washington
104 S.Ct. 2052, 2065). Counsel should not be allowed to shield his failure
to investigate simply by raising claim of 'trial strategy and tactics.'"
Harris v Reed 894 F2d 871, 878. "'Where counsel fails to investigate and
interview promising witnesses, and therefore ''has no reason to believe
they would not be valuable in securing defendant's release,'' counsel's
inaction constitutes negligence, not trial strategy.' Workman v. Tate 957
1339, 1345." Stewart v Wolfenbarger 468 F3d 338, 356. "Defense counsel's
out-of-hand rejection of potential witnesses and decision not to call
witness because prosecution's case was so weak falls below the minimum
standards of professional competence." U.S. ex. rel. Cosey v. Wolff 727
F2d 656.... The defendant must show 'a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding would
have been different. A reasonable probability is a probability sufficient
to undermine confidence in the outcome of the trial.' Strickland at 2068."
Harris at 878-879. With reference to petitioner's  allegations that counsel
failed to render constitutionally adequate assistance:  'Strickland requires
a reviewing court to 'determined whether,' in light of all circumstances,
the identifying acts or omissions were outside the wide range of

professional competent assistance.' 104 S.Ct. at 2066. Kimmelman at 2588." Reed at 877.
"The right to effective counsel... may in a particular case be violated by an isolated
error... if that error is so egregious and prejudicial,' Murray v. Carrier 106 S.Ct. 2650
we emphasize again that each error must be assessed in relation to 'counsel's overall
performance, before and after trial.' Kimmelman at 2588." People v Reed 449 Mich. 375,
393, n 14.

### Preservation of the Issue

This issue was not preserved in any state court proceeding.

### Cause

Out of desperation to be released from this false and unjust incarceration, not
knowing law, the cumulative effect of the others errors overshadowed the onlook of one
of the main causes of the Trier of Facts verdict, the profound forgoing error. Although
having a conscious concern of said error, how to implement these errors, without **all** the
evidence of its existence, at the time, was not apparent. "When ineffective assistance
of counsel, based on a failure to raise viable issues, is the justification for excusing
procedural default, movant must establish ineffective assistance of counsel pursuant to
the standard set forth in Strickland v Washington, supra, or that 'some objective factor
external to the defense impeded counsel's efforts to comply with the State's procedural
rule.' Murray at 2644." 449 Mich at 382. "Dealing with the defaults in reverse order,
appellate counsel's decision to winnow out weaker arguments and focus on those more likely
to prevail is not evidence of ineffective assistance. Jones v. Barnes 103 S.Ct. 3308. Nor
is the failure to assert all arguable claims sufficient to overcome the presumption that
counsel functioned as reasonable appellate attorney in selecting the issues presented."
Id at 391.

### Prejudice

"To establish prejudice, 'a criminal defendant... must show 'that counsel's errors
were so serious as to deprive defendant of a fair trial, a trial whose result is reliable.
Lockhart v. Fretwell 506 U.S. 364; 113 S.Ct. 838, quoting Strickland, supra, at 687....
The proper inquiry is... An analysis that focuses 'solely on the mere outcome

determination, without attention to weather the result of the proceeding was fundamentally

unfair or unreliable, is defective.' Lockhart at 369." 449 Mich. at 401 and n 21. "'Actual

prejudice' is defined by MCR 6.508(D)(3)(b)(i) to mean that the defendant must show a

reasonably likely chance of acquittal if not for the alleged error." Id, 406. "(iii) in

any case, the irregularity was so offensive to the maintenance of a sound judicial process

that the conviction should not be allowed to stand regardless of its effect on the outcome

of the case." Id 407 n 2.

## Legal Principal

In Schlup v. Delo 115 S.Ct. 851, "Schlup's claim is accompanied by an assertion of

constitutional error at trial: the ineffectiveness of his counsel and the withholding of

evidence by the prosecution. As such, his conviction may not be entitled to the same degree

of respect as one that is the product of an error-free trial, and his evidence of innocence

need carry less of a burden." Id, 853. "In Strickland v. Washington 104 S.Ct. 2052, the

enumerated the now familiar principles governing a convicted defendant's claim that his

or her counsel rendered constitutionally ineffective assistance at trial. In broad strokes,

'the benchmark for judging a claim of ineffectiveness must be whether counsel's conduct

so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result.' Id at 2064.... The defendant must affirmativel

establish that counsel's performance was both constitutionally deficient and that the

deficiency prejudiced the outcome of the Trial." Harris at 877.

## Summary of Argument

"The Sixth Amendment to the United States Constitution also mandates that "in all

criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel

for his defence.' 'Michigan law has well established that it is a duty which counsel so

designated owes to his profession, to the court engage in the trial, and to the cause of

humanity and justice, not to withhold his assistance nor spare his best exertions, in the

defense of one who has the double misfortune to be stricken by poverty and accused of

crime.' 1 Cooley (8th.ed.), Supra 700" People v Pickens 446 Mich. 298, 311. In the case

at bar, when Alibi witnesses came forth with the whereabouts of the Petitioner on the date

and time of the crime with evidence in corroboration thereof, interviewed
and introduced to the Trial Judge whom put them on the witness list, all
on the day of Trial, See (Tr. Trans. pg. 4-6), Defense Counsel expressed
to the defendant that he was not ready to proceed with an Alibi defense,
however, Counsel was ready for a Misiddentification defense. Defense Counsel
states to the court "As we earlier indicated, your Honor, there were several
witnesses that the Defendant had preliminarily -- elected to call. **However,
I've discussed this case again with Mr. Rucker.** He understands that he can
call these witnesses. He understands that he can testify on his own behalf.
He has elected first to not call the two potential witnesses that we talked
about, Ms. Anderson.... And there is another witness that we had spoken
to as well, and we elect not to call the second witness as well." (Tr. Trans
pgs. 79-80). A connotation that the decision not to call Alibi witnesses
whom were available and at trial at the time, was brought forth by the
assistance of counsel, which was not only ineffective but was also contrary
Federal Court decision. <u>Lawrence</u> v. <u>Armontrout</u> 900 F2d 127, the court
reversed and remand "the case to the district court with instructions to
appoint counsel for Lawrence and to hold an evidentiary hearing to determine
whether trial counsel's failure to investigate and call Alibi witnesses
prejudiced Lawrence's defense," Id 131, holding that, "Testimony from alibi
witnesses would bolster rather than detract from a defense of
Misidentification by negating the inference raised by an eyewitness
identification that the defendant had been present at the scene of the crime
A tactical decision to rely on a Misidentification defense in no way
forecloses the concurrent use of Alibi witnesses." Id, 130. The "errors
of counsel went to the very heart of Petitioner's defense, namely, that
when the crime was committed," the Petitioner was no where near the area
of the crime, miles even. Stewart at 357. Had Counsel correctly informed
the Petitioner that the Alibi defense corroborates and bolsters a

- 34 -

Misidentification defense, the intent of the Petitioner to have Alibi witnesses come forth and be heard would have been established and would unequivocally, establish another point of innocence on behalf of the Petitioner. "Our confidence in the outcome is very much undermined. Eyewitness identification evidence uncorroborated by a fingerprint, gun, confession, or coconspirator testimony, is a thin thread to shackle a man forty years. Moreover, it is precisely the sort of evidence that an Alibi defense refutes best." Of course we know that in Michigan, a competent Trial Judge in a bench trial is to know the applicable laws on such matters. See People v Shermann-Huffman 466 Mich. 39, 43. On these facts it seems "clear to us that to make such inquiry effective, defense counsel should ... expose to the jury the facts form which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Counsel's ineffectiveness "'would be constitutional error of the first magnitude and no amount of showing of want of want of prejudice would cure it.' Brookhart v. Janis 86 S.Ct. 1245, 1246.' Smith v. Illinois 88 S.Ct. 748, 750." Davis v Alaska 94 S.Ct. 1105 1111. See also Griffin v Warden,M.D. Correctional Adjustment Center 970 F2d 1355, 1359. Consequently, there is a reasonable probability of a differen outcome for Petitioner's case. "('In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.... Taking the unaffected findings as a given, and taking due account of the effect of the errors on the defendant remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.').... The difference between the case that was and the case that should have been is undeniable. We therefore hold that Petitioner received ineffective assistance of counsel Strickland at 695-696." Steward at 361.

- 35 -

### IV.   POLICE MISCONDUCT, IN CONNECTION WITH THE COLLECTION OF DNA, CONSTITUTED DENIAL OF DUE PROCESS.

**Standard of Review**

"Resolution of this claim requires us to apply the standard announed by the Supreme Court in <u>Arizona</u> v. <u>Youngblood</u> 109 S.Ct. 333. There, the Court held that 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process law.' 109 S.Ct. at 337." U.S. v Stevens 935 F3d 1380, 1387.

**Preservation of the Issue**

This issue was not preserved in any state court proceeding.

**Cause**

There was no evidence of "per se bad faith" <u>Brady</u> v. <u>Maryland</u> 83 S.Ct. 1194, until the Detroit Crime Lab was closed.

**Prejudice**

"It make no sense to ignore the fact that a defendant has been denied a fair trial because the state allowed evidence that was material to deteriorate beyond the point of usefulness, simply because the police were inept rather than malicious." Said one commentator in Youngblood. Even if bad faith wasn't shown, evidence of law enforcement officers failure to investigate the Complainants statements of biological evidence to identify the perpetrator of the crime, is "used to cap an attack on the integrity of the investigation." Kyles v Whitley 115 S.Ct. 1555, 1573, which brings prejudice to this case.

**Legal Principles**

The District Court has recognized... there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request." U.S. v Agurs 96 S.Ct. 2392, 2401. "'The presence or absence of

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEREMY GERMAIN RUCKER,
                 Petitioner,

Vs.


Blaine Lafler,
              Respondent,

_____/

Federal Court No._____
Supreme Court No. 137851
Court of Appeals No. 280082
Circuit Court No. 07-006144-0

Case:2:10-cv-11132
Judge: Edmunds, Nancy G
MJ: Morgan, Virginia M
Filed: 03-22-2010 At 11:21 AM
HC JEREMY RUCKER V BLAINE LAFLER (L
G)


**MEMORANDUM OF LAW IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**


By:    Jeremy Germain Rucker# 657235
        Petitioner In Pro Se
        Boyer Road Correct. Facility
        10274 E. Boyer Road
        Carson City, MI 48811-5000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................iii

STATEMENT OF SUBJECT AND APPELLATE JURISDICTION.......................vi

CONSTITUTIONAL PROVISIONS.............................................vi

STATEMENT OF ISSUES PRESENTED........................................vii

STATEMENT OF FACTS..................................................viii

ARGUMENT:

     I.    **THE TRIER OF FACTS' CONCLUSION OF FACT, CAUSED BY THE PREJUDICE OF THE TRIAL COURT TOWARD THE GUILT OF THE PETITIONER, EQUATES TO A JUDICIAL PREVARICATION OF PRESUMPTIVE EVIDENCE THAT IN ITSELF WAS CONTRARY TO ITSELF IDENTIFYING A DUE PROCESS MISCARRIAGE OF JUSTICE**....................................................1

     II.   **THE MICHIGAN COURT OF APPEALS, FAILING TO ADDRESS THE CLEARLY ERRONEOUS REVIEW OF THE FINDINGS OF FACT, IDENTIFIED THE CORRECT GOVERNING LEGAL PRINCIPAL ON LINE-UPS AND EYEWITNESSES, FROM [THE SUPREME] COURT'S DECISIONS, BUT UNREASONABLY APPLIED THAT PRINCIPAL TO THE FACTS OF THE PETITIONERS CASE, MAKING FINDINGS THAT NEITHER FAIRLY SUPPORTED THE RECORD NOR [LAW], RESULTING IN CONSTITUTIONAL ERROR**.......................................................19

     III.  **COUNSEL WAS INEFFECTIVE IN NOT INTERVIEWING AND PLACING ON THE STAND ALIBI WITNESSES WHOM, WERE AT TRIAL, INTERVIEWED BY PROSECUTOR, AND, UPON THE REQUEST OF THE PROSECUTOR, PLACED ON THE WITNESS LIST ON THE DAY OF TRIAL BY THE TRIAL JUDGE**....31

     IV.  **POLICE MISCONDUCT, IN CONNECTION WITH THE COLLECTION OF DNA, CONSTITUTED DENIAL OF DUE PROCESS**..........................36

APPENDIX A (Exhibits)

APPENDIX B (Briefs and decisions from Mich. Ct. of Apps. and Mich. Sup.Ct.)

APPENDIX C (Trial Court Testimony)

TABLE OF AUTHORITIES

## Federal

Fry v. Pliler 127 S.Ct. 2321....................................................15, 16
Holmes v. South Carolina 126 S.Ct. 1727.......................................26, 27
Bousley v. U.S. 118 S.Ct. 1604......................................................1
Kyles v. Whitley 115 S.Ct. 1555............................................12, 36, 37
Schlup v. Delo 115 S.Ct. 851.................................................1-3, 33
Williamson v. U.S. 114 S.Ct. 2431...................................................7
Litky v. U.S. 114 S.Ct. 1147.......................................................13
Brecht v. Abrahamson 113 S.Ct. 1710................................................15
Herrera v. Collins 113 S.Ct. 853....................................................1
Lockhart v. Fretwell 113 S.Ct. 838.............................................32-33
Sawyer v. Whitley 112 S.Ct. 2514...................................................20
White v. Illinois 112 S.Ctt. 736....................................................6
McClesky v. Zant 111 S.Ct. 1454.....................................................1
Arizona v. Youngblood 109 S.Ct. 333............................................17, 36-37
U.S. v. Sokolow 109 S.Ct. 1581.....................................................38
Coy v. Iowa S.Ct. 2789..............................................................6
Greer v. Miller 107 S.Ct. 3102.....................................................13
Kentucky v. Stincer 107 S.Ct. 2658..................................................6
Smith v. Murray 106 S.Ct. 2661......................................................1
Murray v. Carrier 106 S.Ct. 2639................................................1, 32
Kuhlmann v. Wilson 106 S.Ct. 2616...................................................1
Kimmelmann v. Morrison 106 S.Ct. 2574..........................................31-32
Crane v. Kentucky 106 S.Ct. 2142...................................................27
U.S. v. Miller 105 S.Ct. 1811.......................................................2
U.S. v. Young 105 S.Ct. 1038...................................................19-20
Strickland v. Washington 104 S.Ct. 2052.......................................31-32, 35
Jones v. Barnes 103 S.Ct. 3308.....................................................32
Illinois v. Gates 103 S.Ct. 2317...................................................38
Sumner v. Mata 103 S.Ct. 1303.......................................................5
Engle v. Issac 102 S.Ct. 1558......................................................16
U.S. v. Cortez 101 S.Ct. 690.......................................................38
Cuyler v. Sullivan 100 S.Ct. 1708...................................................3
Jackson v. Virginia 99 S.Ct. 2781.................................................3-5
U.S. v. Agurs 96 S.Ct. 2392....................................................12, 17, 36-37
Scheuer v. Rhodes 94 S.Ct. 1683................................................18, 30
Davis v. Alaska 94 S.Ct. 1105...................................................9, 35
U.S. v. Ash 93 S.Ct. 2568..........................................................22
Neil v. Biggers 93 S.Ct. 375......................................................xvi
Johnson v. Louisiana 92 S.Ct. 1624..................................................4
Giglio v. U.S. 92 S.Ct. 763........................................................12
In re Winship 90 S.Ct. 1068.........................................................3
Simmons v. U.S. 88 S.Ct. 967.......................................................38
Smith v. Illinois 88 S.Ct. 748.....................................................35
Stovall v. Denno 87 S.Ct. 1967.....................................................22
Gilbert v. California 87 S.Ct. 1951................................................22
U.S. v. Wade 87 S.Ct. 1926.....................................................ix, 21, 23, 25
Chapman v. California 87 S.Ct. 824..................................................16
Hoffa v. U.S. 87 S.Ct. 408.........................................................22
Miranda v. Arizona 86 S.Ct. 1602...............................................22, 24
Brookhart v. Janis 86 S.Ct. 124....................................................35
U.S. v. Ventresca 85 S.Ct. 1926....................................................xi
Aguilar v. Texas 84 S.Ct. 1509....................................................xii
Brady v. Maryland 83 S.Ct. 1194................................................36-37
Wong Sun v. U.S. 83 S.Ct. 407......................................................22
Jones v. U.S. 80 S.Ct. 725........................................................xii
Napue v. Illinois 79 S.Ct. 1173....................................................12

U.S. v. U.S. Gypsium Co. 68 S.Ct. 525.............................................20
U.S. v. Atkinson 56 S.Ct. 391....................................................15
Wibborg v. U.S. 16 S.Ct. 1127....................................................20
Burden v Zant 498 U.S. 433........................................................5
California v. Green 399 U.S. 149..................................................7
Vasquez v. Jones 496 F3d 564.....................................................16
Stewart v. Wolfenburger 468 F3d 338..........................................31, 34-35
Fulcher, 444 F3d 809.............................................................16
Mckenzie v. Smith 326 F3d 721.....................................................1
Matthews v. Abramajty 319 F3d 780................................................16
U.S. v. Khalil 279 F3d 358........................................................2
U.S. v. Russell 221 F3d 615.......................................................7
Harris v. Stovall 212 F3d 940.................................................1-2, 19
Nevers v. Killinger 169 F3d 352..................................................14
Harris v. Johnson 81 F3d 535.....................................................19
U.S. v. Alzate 47 F3d 1103.......................................................11
U.S. v. McCarty 36 F3d 1349.......................................................3
Schlup v. Delo 11 F3d 738.........................................................2
Griffin v. Warden, Md. Correctional Adjustment Center 970 F2d 1355............30, 35
U.S. v. Pierre 958 F2d 1304..................................................3, 13, 20
Workman v. Tate 957 F2d 1339.....................................................31
U.S v. Beddow 957 F2d 1330........................................................2
Mikes v Borg 947 F2d 353.......................................................xiv
U.S. v. Stevens 935 F2d 1380.......................................8, 16-17, 28, 36-38
U.S. v. Wallach 935 F2d 445......................................................28
Lawrence v. Armontrout 900 F2d 1355..........................................30, 35
Harris v. Reed 894 F2d 871.......................................................31-
U.S. v. Ruis 860 F2d 615......................................................13, 20
U.S. v. Gramham 858 F2d 986...................................................xvii, 7
Mills v. Scully 826 F2d 1192.....................................................12
U.S. v. Valentine 820 F2d 565....................................................12
Thigpen v. Cory 804 F2d 897......................................................29
U.S. v. Hathaway 798 F2d 902......................................................2
U.S. v. Tapia 761 F2d 1488.......................................................30
Downing, 753 F2d 1230.............................................................9
U.S. v. 743 F2d 902...............................................................2
U.S. v. Jannotti 729 F2d 213.....................................................16
U.S. ex. rel. Cosey v. Wolff 727 F2d 656.........................................31
U.S. v. Massey 594 F2d 676.......................................................15
U.S. v. Giacalone 541 F2d 508.................................................xvii, 38
Government of the Virgin Islands v. Toto 529 F2d 278.............................16
U.S. v. Van Fossen 460 F2d 38.....................................................7
U.S. ex. rel. Phipps v Follette 428 F2d 912....................................4, 6
U.S. v Hollis 424 F2d 188........................................................21
Chubet v. U.S. 414 F2d 1018......................................................15
Doram v U.S. 380 F2d 595..........................................................7
Mlandinich v. U.S. 371 F2d 940...................................................21
Cukaj v. Warren 305 F. Supp. 2d. 789..............................................1
State v. Elmer 815 F. Supp. 319..................................................11
U.S. ex. rel. Harden v Follette 333 F. Supp. 371..................................4

Federal Statutes

28 U.S.C. § 2254, 18 U.S.C. § 1341; Federal Rules of Evidence 801, 701, 613(b), 608(b), 605, 405(b), 403, 302(a),201(b); Federal Rules of Criminal Procedure 52(a)

## State of Michigan

People v. Shermann-Huffman 466 Mich. 39...........................................13, 35
People v. Johnson 460 Mich. 720....................................................ix, xv
People v. Gray 457 Mich. 107............................................................xv
People v. Lemmon 456 Mich. 625...........................................................7
People v. Reed 449 Mich. 375.........................................................32-33
People v. Bahoda 448 Mich. 261..........................................................13
People v. Pickens 446 Mich. 298.........................................................33
People v. Malone 445 Mich. 369............................................................7
People v. Kurylczyk 443 Mich. 289.......................................................29
Baker v. Baker 411 Mich. 561............................................................14
People v. Kachar 400 Mich. 78........................................................ix, 23
Tuttle v. Department of State Highways 397 Mich. 44....................................21
People v. Garcia 389 Mich. 250..........................................................21
People v. Anderson 389 Mich. 155.....................................................x, 21
People v. Drohan 264 Mich. App. 77......................................................27
People v. Davis 241 Mich. App. 697..............................................ix, x, 28-29
People v. Ullah 216 Mich. App. 669......................................................14
People v. McMillian 213 Mich. App. 134..................................................37
People v. Adamski 198 Mich. App. 133.....................................................6
People v. Taylor 195 Mich. App. 57......................................................14
People v. Simon 189 Mich. App. 565......................................................14
People v. Johnson (On Rem) 180 Mich. App. 423...........................................22
People v. Rushlow 179 Mich. App. 172....................................................14
People v. Armstrong 175 Mich. App. 181..................................................14
People v. Sterling 154 Mich. App. 223...................................................15
People v. Dungy 147 Mich. App. 83....................................................37, 39
People v. Harrison 138 Mich. App. 74....................................................23
People v. Audison 126 Mich. App. 829....................................................15
People v. Ramsey 89 Mich. App. 468......................................................20
People v. Redfern 71 Mich. App. 452.....................................................15
People v. Wright 44 Mich. App. 111.......................................................2
People v. Cotton 38 Mich. App. 763......................................................23
People v. Ciatti 17 Mich. App. 4........................................................14

## Michigan Statutes

Michigan Compiled Laws 763.4; Michigan Court Rules 6.508(D)(3)(b)(i),(iii), 6.201(A)(6),
(B)(1),(2), (C)(2)(b),(c), (H), 6.403, 2.517(A)(1); Michigan Court Rules and Practice 201.3
Michigan Rules of Evidence 801, 701, 613(b), 608(b), 403, 201(b); Criminal Jury Instruction
2d 3.2(1); Governmental Criminal Rules 1963, 517.1.

## Other Legal Cites

Kane v. Klos 50 Wash.2d 778.............................................................21
Wenzel v. Wenzel 283 SW2d 882...........................................................21
Maguire, Evidence of Guilt, 221 (1959
1 Cooley (8th. edition)
Blacks Law Dictionary (9th edition)

## STATEMENT OF SUBJECT AND APPELLATE JURISDICTION

The Michigan Supreme Court had subject matter Jurisdiction over the Application for Leave to Appeal Action, Pursuant to (MCR) 7.302 (B)(5), Through it's Federal Question Jurisdiction, 28 U.S.C. §§ 1331, 1343, 2201, and 2202; This action is being brought under, 28 U.S.C. § 2254, and that the Michigan Court of Appeals Violated Petitioners 14th Amendment Right's, in an Appeal of Right De novo hearing, by not addressing the Petitioners 14th Amendment Right Violation at Trail level. The Michigan Supreme Court Violated Petitioners 14th Amendment Right's by not giving fact's and reason's for their decision to deny leave to have the issues heard. This Violation of the Michigan Constitution, 1963, ART. VI § 6.

The Michigan Supreme Court entered a Judgement, that: On order of the Court, the application for leave to appeal the October 23, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court, dated March 23 2009, this Application is within the Time allotted which is One Year, and Petitioner is entitled to Redress. Petitioner Invokes Jurisdiction to this Honorable Court.

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. VI.
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed; which district shall have been previously acertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of Counsel for his defense.

U.S. Const. Amend. IX.
The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people.

U.S. Const. Amend. XIII § 1.
Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been Duly convicted, shall exist within the United States, or any place subject to their jurisdition.

U.S. Const. Amend. XIV.
All persons born or naturalized in the United States, and Subject to the Jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of Life, Liberty, or property, without Due Process of law; nor deny to any person within it's jurisdiction the equal protection of the laws.

U.S. Const. Amend. XV § 1.
The right of citizens of the United States to vote shall not be denied or abridged by the United States or any State on account of race, color, or previous condition of servitude.

## STATEMENT OF ISSUES PRESENTED

Issue I.

  WHETHER THE TRIER OF FACTS' CONCLUSION OF FACT, CAUSED BY THE PREJUDICE OF THE TRIAL COURT TOWARDS THE GUILT OF THE PETITIONER, EQUATES TO A JUDICIAL PREVARICATION OF PRESUMPTIVE EVIDENCE THAT IN ITSELF WAS CONTRARY TO ITSELF IDENTIFYING A DUE PROCESS MISCARRIAGE OF JUSTICE.

Issue II.

  WETHER THE MICHIGAN COURT OF APPEALS, FAILING TO ADDRESS THE CLEARLY ERRONEOUS REVEIW OF THE FINDINGS OF FACT, IDENTIFIED THE CORRECT GOVERNING LEGAL PRINCIPAL ON LINE-UPS AND EYEWITNESS' FROM [THE SUPREME COURT'S DECISIONS, BUT UNREASONABLY APPLIED THAT PRINCIPAL TO THE PETITIONERS CASE, MAKING FINDINGS THAT NEITHER FAIRLY SUPPORT THE RECORD NOR [LAW], RESULTING IN CONSTITUTIONAL ERROR.

Issue III.

  WETHER COUNSEL WAS INEFFECTIVE IN NOT INTERVIEWING AND PLACING ON THE STAND ALIBI WITNESSES WHOM, WERE AT TRIAL, INTERVIEWED BY PROSECUTOR, AND, UPON THE REQUEST OF THE PROSECUTOR, PLACED ON THE WITNESS LIST ON THE DAY OF TRIAL BY THE TRIAL JUDGE.

Issue IV.

  WHETHER POLICE MISCONDUCT, IN CONNECTION WITH THE COLLECTION OF DNA, CONSTITUTED DENIAL OF DUE PROCESS.

STATEMENT OF FACTS

Overview of Material Facts

         The following information was garnered from the Detroit Police

Department's Investigator's Report of 10-03-05:

                 On October 3, 2005, the complainant was walking to her car in
                 the parking lot of Captain's Restaurant in the area of
                 Schweitzer and Woodbridge in the City of Detroit, County of
                 Wayne. The complainant arrived at her vehicle and opened the
                 car door. She sat down in her vehicle and put the keys in the
                 ignition and looked down to plug in her cell phone into the
                 charger. The complainant started the car and shut the car door
                 and the defendant pulled the car door open. The complainant
                 saw a gun. The defendant said, "be quiet, or I'll shoot." The
                 defendant entered the car and put the gun to the back of the
                 complainant's head. The defendant attempted to kiss the
                 complainant and put his tongue in her mouth. The defendant
                 then laid on top of the complainant **lifting her shirt up,
                 kissing and touching her breast.** The defendant attempted to
                 remove the complainants pants. The complainant was screaming
                 and defendant stuck the gun into her side and stated "shut
                 up or I will shoot." The complainant tried to hit the defendant
                 with her keys. **A witness observed the events taken place and
                 heard the complainant screaming.** She called the police. The
                 defendant left on foot. Officers responded and a report was
                 taken. **The vehicle was conveyed to 7800 to be processed by
                 the Crime Scene Unit. Photographs were taken and fingerprints
                 were lifted off the vehicle.** The complainant went to the Graphic
                 Arts section and provided a sketch. On November 8, 2006, the
                 defendant was in the area of Woodward and Franklin. The
                 defendant approached a female on foot and touched her buttocks
                 and ran. The defendant was found, arrested and identified as
                 Jeremy Rucker, Date of Birth: 02-21-74. **The defendant was
                 released the same evening. A photo showup was conducted with
                 the original complainant and she identified the defendant as
                 the person who assaulted her on October 3, 2005.**

                 A warrant was issued for the defendant's arrest in the instant
                 offense on 12-01-06. The defendant was arrested on the instant
                 offense on 2-25-07. The defendant was found guilty at a waiver
                 trial of the charges of CSC 2nd Degree and Assault with Intent
                 To Rape, Second Offense on 7-26-07.

         The issue at Trial was in the matter of Hornbook Identification,

(Tr. Trans. pg. 6). The Petitioner maintains his innocence that he was

never in the area of the crime scene on the date and time of the crime.

This affirmation of innocence is acquiesced through the connection of

two major Materials of Evidence confirming the Petitioner's innocence

as a Fact. First, the victim's initial detail distinctiveness of the

assailant, stating "I can see his face the whole time," (Tr. Trans. pg.

14), did not and do not fit the description of the Petitioner, including

the exclusion of the Petitioner's "Idiosyncratic or Special features," which shows that the "accuracy of description compared to the defendant's actual appearance" is very distinguishable, thereto as mentioned confirms the Petitioners innocence. Quoting People v Davis 241 Mich. App. 697,703. This manner of examination is also evidently distinguishable by the sketch. The sketch itself, contrary to the propriety of the Trial Court's prevarication, was dissimilar from the appearance of the petitioner as well.

The second Material of Evidence is the existence of Alibi witnesses. (Tr. Trans. pg. 4). If the Trier of Fact would have heard the Alibi witnesses, there is a likelihood that the outcome would have to be different in concerns of the interest of Justice. The existence of these witnesses shows that the examination of the Facts were incomplete and therefore non-determinative of the truth. The outcome responsibility is only factored by the Defense Attorney conveying to the Petitioner that he wasn't ready for an Alibi Defense but was ready for a Misidentification Defense. (Tr. Trans. pgs. 79-80). No reasonable Trier of Fact would beyond a reasonable doubt be able to find the essential elements of the crime proven in this case. People v Johnson 460 Mich. 720, 722-723.

The issue in the Michigan Court of Appeals, in an appeal of right De novo with an attached Clearly Erroneous Standard of Review, was examine under the scope of People v. Davis 241 Mich. App. 697. Similar to Davis, this case involves the challenge of eyewitness testimony, the foveal facto behind the Trial Court's prevaricative decision, by the eight factors analyzed in People v. Kachar 400 Mich. 78. Using such factors to this case, it would be impossible to validate the eyewitness identification of the defendant as the assailant. The Michigan Court of Appeals states that the eyewitness was "not detailed in her description," so there is no possible way, being the primary source of evidence for conviction, any unbiased and reasonable Trier of Fact would construe the eyewitness

identification to be valid and consistent. In <u>People</u> v. <u>Anderson</u> 389 Mich.

155, 180, the Michigan Supreme Court articulated:

> We find serious problems concerning the accuracy of eyewitness
> identification and that real prospects for error inhere in the
> very process of identification completely independent of
> subjective accuracy, completeness or good faith of witness'.

In <u>U.S.</u> v. <u>Wade</u> 87 S.Ct. 1926, 1933, the United States Supreme Court's

reasonable judgment articulated:

> The annals of criminal law are rife with instances of mistaken
> identification... the identification of strangers is proverbially
> untrustworthy... The influence of improper suggestion upon
> identifying witnesses probably accounts for more Miscarriages
> of Justice than any other single factor... Suggestion can be
> created intentionally or unintentionally in many subtle ways.
> And the dangers for the suspect are particularly grave when
> the witness' opportunity for observation was insubstantial,
> and thus his susceptibility to suggestion the greatest.

The Michigan Court of Appeals, however, held this case to Davis's holding

which states:
> We decline to read the language in Wade, supra, or Anderson,
> supra, regarding the unreliability of eyewitness testimony as
> a general proscription against the use of such testimony. Davis,
> supra, 706.

The Petitioner suggest that the use of Davis in such context is

unreasonable and immoral toward the public interest when confronting

the possibility of a Miscarriage of Justice.

Preliminary Examination

The preliminary exam was waved by the petitioner due to the

substitution of Counsel whom at the time did not seem adequately adept

toward the presentation of the facts which was adequately shown by Counsel

presentation of the defendant where there was the issue of identification

while the complainant was still in the Court room. This to the Petitioner

seemed to prejudice the identification process at Trial. The facts that

were necessary for the defendant to know of the incident at the time of

the preliminary exam, i.e...The Police Report, was not avail to the

defendant. A fair opportunity to defend was not given to the defendant.

There is good reason to believe, properly informed decision would've occur

Trial Court proceedings:
D.P.D. Investigator's Report highlights

The report states that the assailant "laid on top of the complainant lifting her shirt up, **kissing**, and touching her breast." The complainant on the stand stated:

A   I started screaming and he said be quiet or I'll shoot you. And he had the gun and he stuck it in the back of my neck and he was kissing me. And then he stuck his hand down my shirt and was kissing my breasts.

O   Was your bra on or off?

A   **It was on.**

O   Was your shirt on or off?

A   **It was on too.** He went underneath my shirt. He pulled my shirt up.

O   Okay. How did he pull your shirt up?

A   He lifted it up from the bottom. There was a tie on top so it couldn't easily get off.  (Tr. Trans. pgs. 13-14)

The focus of this evidence is proof that the Detroit Police Department knew of exculpatory DNA evidence on the victim's clothing at the scene of the crime failed to examine. The complainant emphasize "He was just kissing and slobbering all over me and kissing me." (Tr. Trans. pg. 15) Showing that there was a significant amount of DNA that could have been tested proving my innocence.

The vehicle was conveyed to 7800 Dix Road to be processed, the complainant explains why:

O   Did they call for an evidence tech to come, dust your car for prints?

A   Yes. We were looking at the car because I indicated that **he had opened the door and also was touching around the steering wheel and inside the car.**

-xi-

We -- there was a finger print on the outside of the door

that they saw and -- but they said they wouldn't be able

to get any finger prints from inside the car because it was

like a raised plastic dashboard thing and they said they

couldn't get finger prints off of that.

So, they asked me if they could take my car in to process

the finger print that they found on the window and the door.

O  And did they do so?

A  Yes. (Tr. Trans. pgs 17-18)

As indicated photos inside the vehicle were taken with no indication that

a forensic examination had been performed. The assailant had long hair,

slobbering all over the victim. In the time the assailant had to act out

this crime, common sense shows that since this is the area of the crime,

where probable cause exist, it would be necessary to make a complete

examination of that area any other wise shows that the sincere nature

of the crime was not taken seriously by the Evidence Technicians. "The

need to interpret affidavits in a 'common sense and realistic fashion'

is mandated by the fact that warrants are often sought on short notice

for the purpose of preventing the destruction of evidence. U.S. v Ventresc

85 S.Ct. 741, 746. There are no technical rules establishing a quantum

of evidence necessary to support a finding of probable cause, nor are

there rules requiring that the elements of a crime, or sequential events

of a crime must be shown. The purpose of the reviewing court's inquiry

is merely to determine from the facts set forth in the affidavit and the

**permissible inferences** to be drawn therefrom whether the Magistrate's

decision to issue the warrant was arbitrary because the affidavit contaime

no information which, if credited, was sufficient to establish probable

cause.' 'On the afternoon of Hoffa's disappearance he went to meet with

at least one of his opponents. Another union opponent, who was one of

-xii-

a very few persons with whom Hoffa would willingly enter an automobile,
borrowed a car from the son of the opponent whom Hoffa was to meet, and
then disappeared. Three hours after Hoffa was last heard from this union
opponent reappeared, having had the interior of the borrowed car cleaned
to remove the blood stains.' 'Hoffa had been missing for eight days when
the affidavit for the warrant was filed. This was ample time to permit
a foul-play inference which the Magistrate could properly draw. These
circumstances cannot be construed, just as easily, to support a finding
that Hoffa took an unannounced vacation, or that he drove into the Michigan
wilderness and committed suicide; rather, **they clearly point to the
probability that he was abducted in the automobile (here at issue) to
prevent him from exercising his union rights. These circumstances would
call for a search of the automobile, and for a laboratory examination
of its contents.** The FBI need not prove that Hoffa was abducted in order
to procure a warrant to search the automobile; rather, it must search
the automobile to obtain evidence that Hoffa was abducted." U.S. v
Giacalone 541 F2d 508, 514-515. "Thus, when a search is based upon a
Magistrate's, rather than a police officer's determination of probable
cause, the reviewing courts will accept evidence of a less 'judicially
competent or persuasive character than would have justified an officer
in acting on his own warrant." Aguilar v Texas 84 S.Ct. 1509, 1512 [quoting
Jones v U.S. 80 S.Ct. 725]. Giacalone supra 517. As we noted, the area
in question is crime scene in this case, the complainant gave permission
for her vehicle to be towed for forensic gathering, on the outside of
the vehicle, the crime scene itself was only examined by a photograph,
which is an incomplete examination of the crime scene. The finger prints
location was stated to the Trial Court by the Prosecutor stating, "I would
state that Officer Fitzhugh from Evidence Technician, just so you have
all the information before you, had three finger print lifts taken from
the driver's side rear-door window glass and one finger print lift from

the driver's door frame above the window." (Tr. Trans. pg. 93). We know the assailant "had opened the door," it would be incompetent for this case if both the complainant and the Detroit Police Department waisted tax payer's money on finger print examinations if there was a possibility that the assailant was wearing gloves, if so, the complainant would have stated that simple but necessary detail to be so. This is all important because the **"latent print search revealed negative results with respect to Mr. Rucker."** (Tr. Tran. pg. 77). <u>Identifying this conviction as a possible Miscarriage of Justice.</u> The assailant, in opening the door, had to have left his finger print to open the door. Whether it was the door handle or the top of the door, he had to have open it. The evidence suggests that he opened the door from the top, possibly with the door slight opened "In cases such as the one before us, there must, at the very least, be sufficient evidence in the record to permit the factfinder to determine 'when the fingerprints were impressed; otherwise, any conviction would be based on pure speculation.' Borum v U.S. 380 F2d 595, 597.'" Mikes v Borg 947 F2d 353, 357. "To warrant conviction the trier of fact **must** be able to infer from the circumstances that the fingerprints were impressed at the time the crime was committed. U.S. v Van Fossen 460 F2d 38, 40-41." U.S. v Russell 221 F3d 615, 621. The complainant stated "The police saw some red mark on the back of my trunk and they thought that maybe it could be blood, (Tr. Trans. pg. 38), with the Court quickly notin was never at the trunk of the vehicle. So "the evidence technicians took a sample... on the exterior of the car that purported to be blood... and it's not blood." (Tr. Tran. pg 78). "There is no, as I understand, no physical evidence at all connecting Mr. Rucker to the incident." (Tr. Tran. pgs. 6-7). Attorney Winters states "now, you look at the composite and compare that photograph. <u>It doesn't look like Rucker. That's my opinion... The nose... doesn't match Rucker's nose at all. The hairline, the scars, there is nothing distinguishing in the description that would</u>

**fit Mr. Rucker."** (Tr. Trans. pg. 90). Which argues, with considerable merit whether "a rational trier of fact could have... proved beyond a reasonable doubt," People v Johnson 460 Mich 720, 722-723, the belief of the Trial Court's opinion as "having a striking resemblance to defendant." (Tr. Trans. pg. 95). The description given by the complainant at the scene of the crime to the Detroit Police Department of the assailant will assist in the determination of the Trial Court's opinion. The complainant gave the description, "Black male, skinny, lanky kind of, **average height (6 foot)**, messed u, complexion wearing a white shirt and tie, dirty black pants, 150 to 160 lbs, straight hair to his neck which was wavy, and he looked like Lionel Ritchie." (Tr. Trans. pg. 21). At trail, when asked "any scars, anything unusual about the man's face?" The complainant states "like I said in the composite and the police report, he had wavy hair, unkept, dirty like scruffles and a mustache," identifying scruffles as "like not clean shaven." The Trail Court before hand **established the assailant as being recognizably taller than the complainant** since the complainant is only '5'-"8". (Tr. Trans. pg. 29). Compared independently, the Petitioner is a, Black male, muscular, short ('5'-"6"), Bronze complexion, smooth skin, little to no course dark brown hair on top, and a mustache, look like Dion Sanders or Tiki Barber with four "Idiosyncratic or special features." People v Gray 457 Mich. 107, 116, see also CJI 2d 7.8. 1) The shape of my head. 2) My unshaved face is extends from my Protruding jaws to my cheek bones. 3) The major gap between my teeth. 4) Lastly, the keloid on my right chin that is even more prevalent when I haven't shaved. The Officer In Charge of the incident, Officer LaRosa, when asked why did she make "a determination to bring Ms. Remias down for a photo lineu ?" Stated "because the gentleman involve in the November 8th incident, it happened in the same location as Ms. Remias' incident and also similar description." "The same approximate

-xv-

height, weight, African-American male, medium complexion." (Tr. Trans.
pgs. 75-76). Compared to the initial crime scene description the November
8th incident **is not similar in description,** showing that Officer LaRosa's
testimony is not to reliable. Including were she testifies that Ms. Remias
"at the Photo Lineu ' did not 'hesitate when giving statements for purposes
of Identification." This is shown by the complainants response to Attorney
Winters cross-examination of the complainant:

      Q   Officer LaRosa didn't tell you that they had a guy in custody
            that, in so many words, we think this is the guy that did
            it; that's what Officer LaRosa said, didn't she?

      A   The reason why I was called down was because they found-
            - they caught someone outside of the Renaissance Center
            who grabbed some girls butt and I knew that when I came.

               The Court: Excuse me. They told you that when
      they asked you to come down?

               Witness: Yes

               The Court: They told you they had arrested someone
      who had grabbed somebody's butt?

               Witness: Yes.

               The Court: Okay. You did not hear that at work
      before you came down?

               Witness: No.

               The Court: Okay, go ahead.

(By Mr. Winters, continuing):

      Q  And Officer LaRosa puts these photographs in front of you
          And you look at each of the individuals in there and you
          make an identification, don't you?

      A   Yes.

      Q   How long would you say it took you to make that
          Identification?

> A   I don't know. I was scared.
>
> Q   Sure
>
> A   I obviously didn't want to pick someone who didn't do it.
>
> Q   Sure.
>
> A   It was a picture, <u>I Looked For Awhile.</u> I decided in my head that I was sure. (Tr. Trans. pgs. 40-41)

There are a number of improprieties that need to be addressed in the Court room dialog from the Detroit Police Department to the Michigan Court of Appeals. First, we note admission from the complainant of hesitation during the Photographic Identification process, contradictive to the Michigan Court of Appeals statement that "the victim had no difficulty in identifying the defendant in a photo lineup." We also can see the Factor of "unnecessarily suggestive and conducive to Irreparable Mistaken Identification," Cited in <u>Neil</u> v. <u>Biggers</u> 93 S.Ct. 375, which also noted that the validity of the victims in-court identification **must** be viewed in light of "the totality of the circumstances." Let the Court note the victims demeanor in question by Prosecution towards the totality of the circumstances. This evidence could support a finding that the in-court identification was entirely induced by the conduct of the photo lineup and not at all based upon observations at the time of the assault. (Tr. Trans. pg. 24)

We now turn to the reason for this conviction, the Trial Court states "I believe Ms. Kelly." (Tr. Trans. pg. 97). Stating "Ms. Kelly identifies the defendant as being the person she saw." (Tr. Trans. pg. 95). The eyewitness gave negative testimony stating "Yeah, I mean I got a better look at him but it wasn't like where I could just say nose, eye's, you know like that," whom "maybe had a beard or mustache." She discounts herself asking "how can I be sure?" to the question "is this the person that you saw on October 3rd 2005?" Identifying the Petitioner by his ears for which

-xvii-

there is nothing distinctive about. (Tr. Trans. pgs. 46, 47, and 49).
She did say he was a "fair skinned brown man." (Tr. Trans. pg. 46). Whom
was Arabic, not African American. Stating all the time, from the scene
of the crime through the case, she couldn't identify the assailant, that
"she 'sort of' saw the guy." (Tr. Trans. pg. 56), having nothing to compare
the Petitioner with to say it was the Petitioner. Especially with the
eyewitness speaking in one moment his frame was "muscular-like" "maybe
180 to 200 lbs.," (Tr. Trans. pgs. 50, 51), and at another showing the
assailant to be tall and skinny. (Tr. Trans. pg. 57). Attorney Winters
indeed reminded the Trial Court of the eyewitness testimony, in-court
identification of the Petitioner, and statements made to the police the
night of October 3, 2005 and on the phone with Officer LaRosa, to alert
judicial notice of legal principals within Michigan Laws that convictions
are not based on Partial Identification. (Tr. Trans. pg. 91). Comparing
M.R.E. 201(b) and M.C.R.P 201.3. <u>U.S.</u> v. <u>Graham</u> 858 F2d 986, 990 n 5 states
it very clear, "Indeed, the hallmark of an inconsistent statement offered
to impeach a witness's testimony is that the statement is not hearsay
within the meaning of the term, i.e., it is not offered for the truth
of the matter asserted, see Fed.R.Evid. 801(c); rather, it is offered
only to establish that the witness has said both 'x' and 'not x' and is
**therefore unreliable.**" Independently we see that the eyewitness
identification of the Petitioner is invalid to warrant the conviction
of the Petitioner as the assailant. Let the facts show that both the
complainant and the eyewitness veracity of testimony are less than reliable
to warrant the conviction of the Petitioner as the assailant where this
case stands on hornbook identification. With the Trial Court having all
these facts before it the question stands at how did the Trial Court,
in a Waiver Trial, justify the verdict of guilty toward the Petitioner.

**Closing Argument and Verdict**

-xviii-

There exist two factor's consistent toward partiality on the part of the
Trier of Fact. First, are the closing arguments of the Prosecutor. The
Prosecutor states, "'When you look at Exhibit No. 2 and the photograph
of No. 4. Judge, the People can't tell the Court how to determine it,
the guilt or innocence of Mr. Rucker, but we can tell you that it's clear
and convincing evidence <u>that we would like you to consider this is the</u>
<u>same person.</u> that this photograph, the sketch artist of Alfonso Tinsley
is clearly No. 4.' 'That says that this photo, this photographic image
is just in the mind of Ms. Remias. <u>That she didn't hesitate when she looked</u>
<u>at Mr. Rucker in photograph No. 4.</u>' 'She didn't wavier, she didn't pause.
She was definitive and she's clear and convinced.' 'Judge, <u>there are going</u>
<u>to be differences, the height.</u>' 'Well, Judge, you have the that Mr. Rucker
had different hair on that day,' 'This is a person who changes his looks
as time goes on to hide his identity to hope to take the trier of fact
away from the initial identification of the victim, Ms. Remias.'" (Tr.
Trans. pgs 84, 85 and 87). In it majority, these arguments are speculative
false, and in the persuasiveness of speech towards the identity of the
assailant being the petitioner. Bolstering the eyewitness testimony in
Rebuttal stating, "Judge I would state that there is no reason for Ms.
Kelly to come in here and to lie. She has no motive to lie. She doesn't
know any of the individuals. She has nothing to gain. <u>That her testimony</u>
is impartial and that she <u>was not impeached</u>, so there is nothing to attack
the credibility of Ms. Kelly." (Tr. Trans. pg. 93). The Prosecution in
the Court of Appeals Prosecution Brief to the contrary states, "The
Defendant's contention that there are serious problems concerning the
accuracy of eyewitness identification <u>is true.</u>"(Pr. App'l Br. pg. 4). It
is Clear and Convincing that the Trial Court was persuasively partial
toward the speculative, false, bolstered, persuasiveness of speech by
the Prosecutor toward the identity of the assailant being the Petitioner.
 Second, deals with the dialog of Defense Counsels rebuttal of the

eyewitness showing gender and reverse racial bias against the Petitioner:

O   You sort of saw the guy.

A   Sort of.

O   Said he was light complected, right?

A   Lighter than me. When I say, you know, say that, by me being

    a dark skinned woman, so I would --

O   So the guy was lighter than you, right?

A   Yes.

           The Court: Delete  I hate to say this vernacular,

    I've been trying to tell attorneys that for years. Usually

    when a person who happens to be African- American says

    somebody is 'light', they mean that there lighter than them.

    If they said their 'dark', they mean they're darker than

    them. You're the only witness that ever articulated that

    very well. (Tr. Trans. pg. 56).

This shows the Trial Courts favoritism toward the eyewitness by the Trial
Court bolstering the eyewitness testimony. It becomes more obvious at
sentencing. The Trial Court stated OV-2 as "It didn't necessarily have
to be a real gun... but as finder of fact -- I've got to have something
to hang my hat on to say that's what it was, and I don't have anything."
(Sen. Trans. pg. 13), describing the endangerment of a lethal, potential
weapon, possessed or used, stating "I was unable to determine it was an
actual weapon so I believe he should get zero there." (Sen. Trans. pg.
11). Because, "I don't know that any of those were established. Once again,
if it was a toy gun? That it was a real gun, anything from which an object
can be shot or propelled by the use of explosives, gas or air. So she said
it was a gun. It looked like a gun. And THEY all see it. But to see it
if it looked like a gun to THEM -- it could have been a toy gun." (Sen.
Trans. pg. 12). However, in analyzing OV-9 the Trial Court states different

           The Court: OV-9, now, I think that a ten ought to be here because